IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICKIE SUE CASE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 23-cv-23-DES |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Vickie Sue Case ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

---

[1] Effective December 20, 2023, Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.   Claimant's Background and Procedural History

In May 2021, Claimant applied for disability insurance benefits under Title II of the Act. (R. 17, 172-77). Claimant alleges she has been unable to work since June 4, 2015, due to osteoarthritis, gastritis, diverticulitis, depression, insomnia, bone spurs on her feet, heart problems, and shoulder, hip, and back pain. (R. 172, 194). Claimant was 62 years old on the date of the ALJ's decision. (R. 26, 172). She has a high school education and past work as a president/sales clerk (retail trade). (R. 38, 45, 195).

Claimant's claim for benefits were denied initially and on reconsideration, and she requested a hearing. (R. 51-67, 92-93). ALJ Doug Gabbard, II conducted an administrative hearing and issued a decision on September 29, 2022, finding Claimant not disabled. (R. 17-26, 32-48). The Appeals Council denied review on December 12, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 404.981. Claimant filed this appeal on January 16, 2023. (Docket No. 2).

## III.   The ALJ's Decision

In his decision, the ALJ found Claimant met the insured requirements for Title II purposes through December 31, 2020. (R. 19). The ALJ then found at step one that Claimant had not engaged in substantial gainful activity during the period from her alleged onset date of June 4, 2015, through her date last insured of December 31, 2020. (*Id.*). At step two, the ALJ found Claimant had the severe impairments of hip osteoarthritis and lumbar spine disc disease. (*Id.*). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 20-21).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) with occasional balancing, stooping, kneeling, crouching, and crawling. (R. 21).

Based on the testimony of a vocational expert ("VE"), the ALJ concluded at step four that Claimant could return to her past relevant work as a president/sales clerk (retail trade) as actually performed. (R. 25). Accordingly, the ALJ concluded Claimant was not disabled. (R. 26).

## IV.   Issues Presented

Claimant raises the following points of error in her challenge to the Commissioner's denial of benefits: (1) the ALJ failed to properly evaluate the medical source opinion of Dr. Christopher Beene (Docket No. 10 at 12-15), and (2) the ALJ failed to properly evaluate the consistency of Claimant's subjective symptoms (*id.* at 16-19). The Court finds no reversible error in the ALJ's decision.

## V.   Analysis

### A.   ALJ Properly Evaluated Dr. Beene's Opinion

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 404.1520c. A "medical opinion" is a statement from a medical source about what a claimant "can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in four work-related abilities. 20 C.F.R. § 404.1513(a)(2). These abilities include the "ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)[.]" 20 C.F.R. § 404.1513(a)(2)(i). If the record contains a medical opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why

the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the "persuasiveness" of medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion or finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the most important factors, and the ALJ must always explain how he considered those factors in the decision.[2] 20 C.F.R. § 404.1520c(b)(2). The ALJ is not required to articulate findings on the remaining factors unless there are two or more medical opinions about the same issue that are equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 404.1520c(b)(2), (3).

Plaintiff's primary care physician, Dr. Beene, completed a form titled "Physical Residual Capacity Questionnaire" on April 9, 2021, and stated his opinion was applicable beginning August 16, 2018. (R. 380-84). He opined that during an eight-hour workday, Claimant could sit in two-hour increments for at least six hours total, could not walk without rest or severe pain, and could stand in fifteen increments for less than two hours total. (R. 381-82). Additionally, Dr. Beene opined that Claimant needed to walk for five minutes every ninety minutes, needed a sit/stand option allowing her to change positions at will, and would likely need unscheduled breaks every two hours for five minutes at a time. (R. 382). As to exertional limitations, Dr. Beene found

---

[2] Supportability refers to the relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support his medical opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency refers to the consistency of a medical source opinion "with the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 404.1520c(c)(2).

Claimant could rarely lift less than ten pounds and could never lift above twenty pounds.[3]  As to postural limitations, Dr. Beene found Claimant could frequently look down and turn her head right or left, occasionally look up and hold her head in a static position, but could never twist, stoop, crouch/squat, or climb ladders or stairs.[4]  (R. 383).  Dr. Beene further indicated Claimant would be absent from work more than four days per month.  (*Id.*).  As support for these opinions, Dr. Beene noted Claimant's diagnoses of right shoulder pain, thoracic back pain, and lumbar back pain, as well as his objective findings of reduced range of motion in Claimant's spine and shoulder. (R. 380).

In discussing the medical source opinion evidence, the ALJ concluded Dr. Beene's opinions were unpersuasive.  In support of this determination, the ALJ noted Dr. Beene's opinions were not supported by his own treatment notes, which revealed Claimant intermittently complained of musculoskeletal symptoms, intermittently exhibited abnormal musculoskeletal examination findings, and was not prescribed pain medication until her last appointment prior to her date last insured in July 2020.  (R. 24).  The ALJ further found Dr. Beene's opinions were inconsistent with other evidence in the record, including the dearth of other abnormal musculoskeletal examination findings or complaints and Claimant's own statements to providers that she was walking at the track, working in the yard, being more active, and walking five miles per day during summer 2019. (*Id.*).

Claimant asserts that the ALJ's conclusions regarding the supportability and consistency of Dr. Beene's opinions are not supported by substantial evidence.  Specifically, Claimant takes

---

[3] Dr. Beene left the box next two ten pounds blank on the form he filled out in April 2021, but indicated Claimant could never lift above ten pounds on a form he filled out in July 2022.  (R. 382, 1382).

[4] Dr. Beene indicated Claimant could rarely look down, turn her head right or left, look up and hold her head in a static position, and twist on the form he filled out in July 2022.  (R. 1383).

issue with the ALJ's finding that Dr. Beene's opinions were not supported by his own treatment notes. The Court has reviewed Dr. Beene's treatment notes and finds no error in the ALJ's supportability determination. Dr. Beene's musculoskeletal examination findings were, in fact, entirely normal except for decreased range of motion and strength in Claimant's right hip on September 30, 2016 (R. 344); tenderness and pain in Claimant's lumbar spine on August 15, 2018 (R. 355); decreased range of motion in Claimant's hips and right knee, and tenderness and pain in her lumbar spine on September 5, 2019 (R. 361); and decreased range of motion, tenderness, and pain in her right shoulder on July 13, 2020 (R. 364). Thus, the ALJ's determination that Dr. Beene's opinions were not supported by his own treatment notes is supported by substantial evidence.

As to the ALJ's consistency analysis of Dr. Beene's opinions, Claimant takes issue with the ALJ's determination that Claimant was not prescribed pain medication until her last appointment with Dr. Beene prior to her date last insured. (Docket No. 10 at 14). Claimant specifically asserts that the ALJ misconstrued the record to find that pain medication was not prescribed until immediately prior to her date last insured, when it was prescribed five months prior to her date last insured. Claimant's assertion is belied by the record because the ALJ specifically noted in his decision that Claimant was prescribed Celebrex on July 13, 2020, and that prior to this, Claimant was not regularly prescribed pain medication. (R. 23). Lastly, Claimant asserts the ALJ ignored the context of her statements to providers regarding her daily activities. Contrary to Claimant's assertion, the ALJ did not rely on minimal daily activities as substantial evidence that Claimant was not in pain. Rather, the ALJ referenced Claimant's ability to walk on a track, do yard work, be more active, and walk five miles each day on vacation in summer 2019, which are not the "sporadic performance of [household tasks or work]." *Thompson v. Sullivan,*

7

987 F.2d 1482, 1490 (10th Cir. 1993) (citation omitted). While such actions by themselves do not establish that Claimant can engage is substantial gainful activity, they may be considered along with the other evidence of record when determining the consistency of a medical source opinion. *See Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir. 1983) (finding the claimant's ability to perform household tasks, work in his yard, work on cars, and "take an occasional trip" may be considered, along with the medical testimony, in determining whether a claimant is entitled to disability benefits). In any event, Claimant's reported activities were not the only evidence the ALJ relied on to find Dr. Beene's opinions inconsistent. As set forth above, the ALJ also found Dr. Beene's opinions inconsistent with the "dearth of other abnormal musculoskeletal examination findings or complaints through the date last insured." (R. 24). Accordingly, the ALJ's determination that Dr. Beene's opinions were inconsistent with other evidence of record is supported by substantial evidence.

B.     **ALJ's Consistency Analysis Was Proper**

Claimant contends the ALJ erred in evaluating her subjective symptoms because he did not discuss the required factors and he ignored her strong work history. (Docket No. 10 at 16-19). Claimant's arguments are belied by the record.

The ALJ is required to consider Claimant's subjective complaints, or symptoms[5] in determining the RFC. 20 C.F.R. § 404.1529(a) & (d)(4). The Commissioner uses a two-step process when evaluating a claimant's symptoms.[6] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25,

---

[5] Symptoms mean a claimant's "own description of [her] physical or mental impairment." 20 C.F.R. § 404.1502(i).

[6] Tenth Circuit precedent characterizes this as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all objective and subjective evidence, the claimant's symptom was in fact disabling. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987)). The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna. Paulek v. Colvin,* 662 F. App'x 593-94 (10th Cir.

2017); *see also* 20 C.F.R. § 404.1529. First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged. SSR 16-3p at *3. Second, once such impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's ability to work. *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medications; (5) treatment aside from medication; (6) any other measures the claimant has used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to the symptoms. *Id.* at *7-8. The ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determination when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

The Court finds no error in the ALJ's consistency analysis. In his written decision, the ALJ thoroughly summarized Claimant's administrative hearing testimony. (R. 22). As relevant

---

2016) (unpublished). However, the term "credibility" is no longer used. SSR 16-3p at *2. For purposes of this opinion, the Court will refer to the process as a "consistency analysis."

to this appeal, the ALJ specifically acknowledged Claimant's testimony that she experiences chronic pain, cannot lift her left shoulder, cannot sit or stand for long, and that her pain level increased in 2020. (R. 22). The ALJ then found Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) In reaching this conclusion, the ALJ discussed numerous inconsistencies between Plaintiff's subjective complaints and the evidence of record, including: (1) Claimant's denial of arthralgias and her normal range of motion at a primary care visit on February 8, 2016; (2) Claimant's normal musculoskeletal range of motion at a primary care visit on March 7, 2017; (3) Claimant's denial of arthralgias, joint pain, and neck pain and her provider's notation that she was in no distress on examination at primary care visits on January 11, 2018, and July 9, 2018; (4) Claimant's report to her primary care provider on August 16, 2018, that she walked half a mile "at the track" before developing back pain and her normal range of motion on examination; (5) Claimant's denial of arthralgias and her normal musculoskeletal examination at a primary care visit in January 2019; (6) Claimant's consistent denial of musculoskeletal symptoms at her cardiology appointments throughout the record; (7) Claimant's ability to walk five miles per day on vacation during the summer of 2019; (8) the absence of prescribed pain medication prior to July 2020; (9) the lack of physical therapy, chiropractic treatment, specialized care, or surgery for Claimant's back; (10) Claimant rarely, if ever, complained of left shoulder symptoms or exhibited abnormal left shoulder examination findings; and (11) Claimant rarely, if ever, complained of neck pain or headaches through the date last insured. (R. 22-23).

Claimant asserts that the ALJ failed to consider the factors in 20 C.F.R. § 404.1529(c)(3). As set forth above, the ALJ provided numerous reasons, supported by the record, for finding

Claimant's symptoms were not as severe or functionally limiting as alleged. The ALJ's thorough analysis reflects that he considered Claimant's daily activities (R. 22-23); the location, duration, frequency, and intensity of Plaintiff's symptoms (R. 22); precipitating and aggravating factors (*Id*.); the side effects of medications (*Id*.); her treatment aside from medication (R. 23); and other factors, including her treating providers' examination findings (R. 22-23). In any event, a "formalistic factor-by-factor recitation of the evidence" is not required, "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's" symptoms. *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000). Here, the ALJ linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Kepler* and its progeny, SSR 16-3p, and the regulations. Claimant simply disagrees with the ALJ's interpretation of the evidence. However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cowan,* 552 F.3d at 1185 (10th Cir. 2008). Moreover, even if the evidence could support a different finding, the Court cannot "displace the agency's choice between two fairly conflicting views . . . ." *Id.* Because Claimant points to no evidence the ALJ overlooked, her arguments amount to a request that the Court reweigh the evidence and interpret in her favor, which it cannot do. *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for that of the Commissioner's." (citations omitted).

      Claimant further asserts the ALJ did not acknowledge or discuss her strong work history, which Claimant contends is a credibility enhancing factor. (Docket No. 10 at 18-19). Although the ALJ did not explicitly discuss Claimant's work history in the paragraphs setting forth his

consistency analysis, the ALJ did not omit consideration of Claimant's history work from his decision. Thus, there is no error. The ALJ clearly considered Claimant's work history at step four of the sequential evaluation, because he noted her past relevant work and found she could return to it despite the limitations caused by her impairments. (R. 25). Even though this work history was not discussed as part of the ALJ's consistency analysis, the ALJ is not required to discuss every piece of evidence he considered. *See Bell v. Colvin,* 645 F. App'x 608, 613 (10th Cir. 2016) (unpublished) (factors the claimant "contends were ignored by the ALJ include . . . her good work history," but the ALJ "is not required to discuss every piece of evidence" and the court declined to reweigh evidence even assuming the factors were relevant (quoting *Wall v. Astrue,* 561 F.3d 1048, 1067 (10th Cir. 2009).

VI.   **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 13th day of March, 2024.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE